## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JTH TAX, LLC d/b/a LIBERTY TAX SERVICE, | |
| Plaintiff, | |
| v. | Case No. 2:22-cv-272 |
| JASMINE WHITE, | |
| Defendants. | |

### MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff JTH Tax, LLC's Motion for Default Judgment against Defendant Jasmine White. The Court has considered this matter's procedural history and the content of the record. Accordingly, for the reasons stated herein, the plaintiff's motion is **GRANTED.** It is **ORDERED** that judgment be entered on behalf of the plaintiff and against Defendant White as outlined at the conclusion of this Memorandum Opinion and Order.

## I.    BACKGROUND

Plaintiff JTH Tax d/b/a Liberty Tax Service ("Liberty") filed suit against a former Liberty franchisee, Defendant Jasmine White. In its complaint filed on July 1, 2022, the plaintiff alleges (1) that the defendant breached contract obligations to Liberty under three franchise agreements and two promissory notes (ECF No. 1 ¶ 46–51); (2) that the defendant failed to return property to Liberty (ECF No. 1 ¶ 52–

57); and (3) that the defendant interfered with Liberty's business after the franchise agreements were terminated (ECF No. 1 ¶ 58–64).

The plaintiff timely served the defendant on July 11, 2022. ECF No. 6.  The defendant failed to submit an answer or other responsive pleading to the plaintiff's complaint. The Clerk entered a default on August 8, 2022 (ECF No. 8), and Liberty filed this Motion for Default Judgment on September 30, 2022 (ECF No. 11).[1]

In the instant motion, the plaintiff requests default judgment on its claims for breach of contract, conversion, and tortious interference, as well as attorneys' fees. The plaintiff also seeks an injunction requiring the defendant to return all confidential information she obtained through her affiliation with Liberty and preventing the defendant from soliciting former Liberty clients or conducting a tax return business within the period identified in the parties' franchise agreements. ECF No.11 at 10 ¶ 5.

## II.   LEGAL STANDARD

Once a defendant is served process, they have 21 days to respond. Fed. R. Civ. P. 12(a)(1)(A)(i). When a plaintiff shows that a defendant has failed to file responsive pleadings, the clerk "must enter" a default, Fed. R. Civ. P. 55(a), which amounts to an automatic admission of all allegations in the complaint that do not deal with the amount of damages, Fed. R. Civ. P. 8(b)(6). After the Clerk enters a default, a plaintiff who seeks a default judgment on a claim that is not for a sum certain must "apply to the court for a default judgment." Fed R. Civ. P. 55(b).

---

[1] This matter was reassigned to this Court on March 17, 2023. ECF No. 11.

Whether to grant a motion for default judgment is a matter for the court's discretion. *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Co.*, 383 F.2d 249, 251 (4th Cir.1967); *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014); *Vick v. Wong*, 263 F.R.D. 325, 329 (E.D. Va. 2009). The Fourth Circuit strongly prefers that courts adjudicate cases on the merits and has encouraged district courts to construe Rule 55(c) liberally, in order to deny motions for default judgment. *See, e.g., Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010); *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). However, default judgments are warranted when a defendant fails to appear or participate. *Chafin v. Chafin*, 568 U.S. 165, 175 (2013); *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106 (4th Cir. 2022). Courts in this district have found that default judgment should be granted when the defaulting party's unresponsiveness has halted the adversary process. *See, e.g., Walsh v. Heavenly Hands Home Healthcare LLC*, No. 2:22-cv-237, 2022 WL 18777533, at *5 (E.D. Va. Sept. 1, 2022); *Alstom Power, Inc. v. Graham*, No. 3:15cv174, 2016 WL 354754, at *3 (E.D. Va. Jan. 27, 2016).

Because the defendant, by defaulting, has admitted the facts alleged in the complaint, the Court must determine whether the plaintiff's allegations are sufficient for judgment to be entered. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In other words, the Court should decide whether the complaint contains adequate factual materials to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)); *see Grabert*, 8 F. Supp. 3d at 736 (applying the *Twombly* and *Iqbal* standard in the context of default judgment).

Finally, if the moving party seeks a judgment on damages, the court has discretion over how damages may be shown. *U.S. Workboats, Inc.*, 2021 WL 8445262, at *4 (citing *JTH Tax, Inc. v. Geraci*, No. 2:14-cv-236, 2014 WL 4955373, at *7 (E.D. Va. Oct. 2, 2014)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—*other than one relating to the amount of damages*—is admitted if a responsive pleading is required and the allegation is not denied.") (emphasis added); *Alstom Power, Inc.*, 2016 WL 354754 at *2 (a defaulting defendant is not deemed to have admitted the amount of damages).

## III.   ANALYSIS

### A.     Jurisdiction and Venue

This Court has subject matter jurisdiction under 28 U.S.C. § 1332. There is complete diversity between the parties, as the plaintiff is a Delaware corporation with its principal place of business in Virginia, and the defendant is domiciled in California. ECF No. 1 ¶¶ 5-6. The amount in controversy exceeds $75,000, as required under 28 U.S.C. § 1332.[2]

---

[2] The face of the complaint, while somewhat ambiguous, sufficiently establishes that the amount in controversy in this case exceeds $75,000. The complaint's jurisdiction section explicitly states that the amount in controversy exceeds $75,000 (ECF No. 1 ¶ 7), and nothing else in the complaint directly contradicts that statement.

The Court finds no evidence that the plaintiff's statement of the amount in controversy was made in bad faith. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (holding that an amount-in-controversy allegation

When parties to a contract confer personal jurisdiction and venue on a particular court, the court honors that agreement as long as it is not unreasonable. *See Albemarle Corp. v. AstraZeneca UKLtd.*, 628 F.3d 643, 651 (4th Cir. 2010). The defendant consented to suit in the United States District Court for the Eastern District of Virginia when she signed franchise agreements that contain a forum selection clause naming this as the proper court. ECF Nos. 1-1 through 1-3. We find

---

typically "is accepted if made in good faith.") While the Court's conclusion is based on the facts alleged in the complaint, the evidence of good faith and the sufficiency of the amount in controversy is bolstered by the plaintiff's more streamlined claims in the Motion for Default Judgment, which include $87,926.93 in breach of contract damages alone (ECF No. 11 ¶ 29) and that at least $78,546.37 was in dispute before the complaint was filed (ECF No. 11-1).

Confusion between the jurisdictional section and other allegations in the complaint is resolved by reference to the well-established rule that requests for non-monetary relief figure into the amount in controversy as well as alleged sums certain. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Glenwood Light & Water Co. v. Mut. Light, Heat & Power Co.*, 239 U.S. 121 (1915) (finding jurisdiction by reference to the value of an injunction). The plaintiff's complaint alleges the defendant failed to pay money she owes Liberty, "including over $40,000 in royalties and fees and over $30,000 in notes"—a sum that could, but may not, exceed $75,000. ECF No. 1 ¶ 38. However, the plaintiff also alleges it suffered damages "in an amount to be determined at trial but not less than $70,000 and irreparable harm to its business, reputation, and goodwill for which damages alone are an inadequate remedy." ECF No. 1 ¶ 51.

The Fourth Circuit's most recent instruction that district courts should "consider[ ] not only the amount of money damages [the plaintiff] requested but also the injunctive relief it sought when determining jurisdiction" came from a case brought by Liberty against a franchisee, wherein Liberty pled very similar facts to those presented here. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010). Therefore, the Court is satisfied that the plaintiff has established an amount in controversy sufficient to sustain subject matter jurisdiction under 28 U.S.C. § 1332.

that agreement is reasonable,[3] so this Court has personal jurisdiction over the defendant.[4]

## B.    Default Judgment is Appropriate and Reasonable

The Court would prefer to decide this case on the merits, see *Colleton Preparatory Acad., Inc.*, 616 F.3d at 417, but the defendant's nonresponse makes that impossible. By failing to file responsive pleadings for over ten months, the defendant has brought the adversary process to a standstill. *See Walsh*, 2022 WL 18777533 at *5. Therefore, the Court finds default judgment appropriate.

---

[3] There is no evidence before the Court that the formation of the parties' forum selection clause "was induced by fraud or over-reaching"; neither party will be "deprived of their day in court" because of "grave inconvenience or unfairness" if the Court enforces the clause; the chosen law is not "fundamental[ly] unfair[];" and enforcing the forum clause would not "contravene a strong public policy" of the state of Virginia. *See Albemarle Corp.*, 628 F.3d at 651.

[4] Even if the forum selection clause in the parties' contract does not settle the issue, jurisdiction and venue are proper. This Court has personal jurisdiction over the defendant under Virginia's long-arm statute, which states that "transacting any business in this Commonwealth" is sufficient to confer personal jurisdiction. Va. Code § 8.01-328.1(A)(1). As a franchisee of a Virginia company, Defendant White transacted business here and is subject to personal jurisdiction in Virginia. This Court's exercise of personal jurisdiction also comports with the Due Process Clause of the United States Constitution, which permits personal jurisdiction where a defendant has minimum contacts with the state such that the defendant should "reasonably anticipate being haled to court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 943 (4th Cir. 1994); *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 497 (E.D. Va. 2003). Because the defendant contracted three times with a company with its principal place of business in Virginia, she should reasonably anticipate that Liberty might seek to enforce its contract rights here. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because this contract dispute arises from franchise agreements with a Virginia Beach, Virginia corporation.

The parties agreed in their contracts that Virginia law would govern disputes between them, (ECF Nos. 1-1 through 1-3 ¶ 17(a); ECF Nos. 1-4 through 1-5 at 5), so the Court applies Virginia law to the facts alleged and admitted.

### i.   *Breach of Contract*

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004). The defendant is obligated to the plaintiff under five separate agreements: (1) a February 1, 2017 franchise agreement; (2) a November 14, 2017 franchise agreement; (3) a June 26, 2019 franchise agreement; (4) a June 26, 2019 promissory note; and (5) a July 23, 2019 promissory note. *See* ECF No. 1 ¶¶ 27–29, 31–32. Liberty terminated the defendant's franchise agreements on September 22, 2021 (ECF No. 1 ¶ 36), but the post-termination obligations survived termination (ECF No. 1 ¶ 2).

### a.   *Breaches of the Franchise Agreements*

The defendant breached her obligations under the franchise agreements in several ways:

1. Under section 6(e) of the franchise agreements, the defendant was obligated to keep her franchises open for business. ECF Nos. 1-1 through 1-3. The defendant breached those obligations by failing to operate Liberty Tax offices when she abandoned her franchises. ECF No. 1 ¶ 2.

2.  Under section 9(d) of the franchise agreements, the defendant was obligated to pay Liberty anything she still owed after the agreement was terminated. ECF Nos. 1-1 through 1-3. The defendant breached those obligations by failing to pay the plaintiff royalties and fees she owed. ECF No. 1 ¶ 38.

3.  Under section 9(b) of the franchise agreements, the defendant was obligated to stop identifying herself or holding herself out as a Liberty Tax franchisee, after the agreements were terminated. ECF Nos. 1-1 through 1-3. The defendant breached her post-termination obligations by holding herself out to be associated with Liberty and by soliciting Liberty clients. ECF No. 1 ¶¶ 40–43. Specifically, after her franchise agreements were terminated, the defendant's LinkedIn profile still described her as a manager at Liberty Tax Service (ECF No. 1-7), and the defendant still claimed on Facebook to be a business owner at Liberty Tax (ECF No. 1-8).

4.  Under section 9(g) of the franchise agreements, the defendant was obligated to return to Liberty lists containing the names and contact information of franchise customers. ECF Nos. 1-1 through 1-3. The defendant breached those obligations by failing to return client lists after Liberty terminated the agreements. ECF No. 1 at ¶ 39.

5.  Under section 9(h) of the franchise agreements, the defendant was obligated to return to Liberty its customer tax returns, files, and records. ECF Nos. 1-1 through 1-3. The defendant breached those obligations by failing to remit tax return files after Liberty terminated the agreements. ECF No. 1 ¶ 39.

6.  Under section 9(i) of the franchise agreements, the defendant was obligated to return her copy of the Liberty operations manual. ECF Nos. 1-1 through 1-3. The defendant breached those obligations by failing to return the manual after Liberty terminated the agreements. ECF No. 1 ¶ 39.

7.  Under section 10(d) of the franchise agreements, the defendant was obligated not to solicit any of her previous customers within twenty-five miles of "the boundaries of the Territory," for a two-year period after Liberty terminated the agreements. The "Territory," defined in Schedule A of the agreement, is north of Garden Parkway and south of Rosecrans Avenue, between highway 110 and Wilmington Avenue, in Los Angeles, California. ECF No. 1-1 through 1-3 at 30. The complaint alleges that on January 3, 2022, the defendant posted a video to Facebook wherein she stated that she was no longer working with Liberty, but she still had "all your files" and that "everything is still the same." ECF No. 1 ¶ 43. These statements, which the Court must accept as true, plainly solicit former Liberty customers whose files the defendant retained. That conduct would certainly violate the franchise agreements if it occurred within the restricted area, but Liberty only alleges "[o]n information and belief" that the defendant's post-termination office is "at or around her last known addresses, which are both within 25 miles of restricted areas." ECF No. 1 ¶ 45. That allegation alone is not specific enough for the Court to find that the defendant breached her obligations under section 10(d) of the agreement. However, the plaintiff also submitted an affidavit stating that Liberty records

and IRS data show that the defendant filed 193 tax returns in 2022, after the franchise agreements were terminated, within the areas covered by the non-compete clauses. ECF No. 14 ¶ 3 (affidavit); ECF No. 14-1 (record). On those facts, the Court finds that the defendant's solicitation of former Liberty customers constitutes a breach.

The plaintiff also alleges one breach of the franchise agreements that does not pass muster under *Twombly* and *Iqbal*, so the Court denies default judgment as to that part of the breach of contract claim, which does not defeat the claim or the plaintiff's motion. Though the Federal Rules of Civil Procedure do not require "detailed factual allegations," each of the plaintiff's claims must have enough factual content that a court can draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. The Court finds the pleading insufficient as to one of the plaintiff's allegations of breach of contract:

8. Under section 10(f) of the agreement, the defendant was obligated to "not do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty . . . including their current and former employees, directors or agents." ECF No. 1-1 through 1-3. The plaintiff alleges that, "in February 2022," the defendant "returned to" one or more of her former franchise locations, where she "disrupted Liberty business and harassed employees." ECF No. 1 ¶ 45. These allegations are insufficient to satisfy the Court that Liberty determined, prior to filing the complaint, that the defendant's return to her former office(s)

and/or conduct there was "harmful, prejudicial or injurious to Liberty." ECF No. 1-1 through 1-3 ¶ 10(f).

> b.    *Breaches of the Promissory Notes*

The defendant also breached her obligations to Liberty under the two promissory notes. Under the June 26, 2019 note, the defendant was obligated to pay Liberty $32,000 plus interest, on a yearly schedule, with the full principal and all remaining interest due on February 28, 2023. ECF No. 1-4 at 1. Under the July 23, 2019 note, the defendant was obligated to pay Liberty $124,792.51 plus interest, on or before February 27, 2020. ECF No. 1-5 at 1. The defendant breached her obligations under the notes by failing to pay the amounts she owed (discussed in more detail under Damages, *infra*). ECF No. 1 at ¶ 50.

The Court finds that the defendant breached her franchise agreements with Liberty in at least six ways, and that she failed to pay the two promissory notes as she was obligated to do.

The Court further finds the affidavit of Heather Joyner-Reed (ECF No. 11-1), which the plaintiff submitted in connection with its claimed damages under Count One, supports a finding that the defendant owed $87,926.93 in principal and interest under the franchise agreements and promissory notes, as of September 22, 2022.

With the limitations detailed in paragraph (8) *supra*, the plaintiff has provided the Court with sufficient evidence to determine its damages as to Count One. Accordingly, the Motion for Default Judgment is **GRANTED as to Count One**, and the plaintiff is **AWARDED $87,926.93**, plus post-judgment interest.

### ii.   Conversion

In Virginia, "[c]onversion is a wrongful exercise or assumption of authority over another's goods that deprives the owner of possession, or an act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's right." *Mackey v. McDannald*, 298 Va. 645, 659 (2020).

Liberty owned client lists, tax return files, and an operations manual (ECF No. 1 ¶ 53–54), which the parties' franchise agreements required the defendant to return to Liberty once those agreements were terminated (ECF No. 1 ¶ 53; ECF Nos. 1-1 through 1-3 ¶ 9(g)–(i)). The defendant had a right to use that information to operate a Liberty franchise, but she did not acquire a property interest in the information. ECF No. 1 ¶ 54; ECF Nos. 1-1 through 1-3 ¶ 9. After Liberty terminated the defendant's franchise agreements, the defendant failed to return client lists, tax return files, and the operation manual to Liberty (ECF No. 1 ¶ 55), which was inconsistent with the plaintiff's right to the property. The defendant also solicited former Liberty customers by saying, in a video posted on Facebook, that she still had all their files and that "everything [would be] still the same," even though she was "not working with Liberty." ECF No. 1 ¶ 43. In doing so, the defendant wrongfully exerted dominion over the clients' files, in denial of the plaintiff's ownership right.

The plaintiff submitted the affidavit of Connor Smotherman (ECF No. 14) to establish damages under Count Two.[5] Based on the evidence therein, the Court finds

---

[5] The first affidavit the plaintiff submitted in support of its claimed damages under Count Two (ECF No. 11-3) outlined what a Liberty franchisee would charge, on average, for preparing and filing tax returns. It seeming to the Court that the

that, in the two-year period before her franchises were terminated, the defendant charged an average of $585 per tax return she filed on behalf of a customer. *Id.* ¶ 5. After her franchises were terminated, the defendant used Liberty's electronic filing identification number to file 193 tax returns. *Id.* ¶ 3. Based on those figures, the Court finds that the defendant likely earned $112,905 in net fees for filing the 193 tax returns. The Smotherman affidavit indicates that, pursuant to the franchise agreements, Liberty would have charged the defendant 14 percent of that total in royalty fees and five percent in marketing fees, for a total of $21,451.95. The Court finds that the defendant converted $21,451.95 from the plaintiff.

The Motion for Default Judgment is **GRANTED as to Count Two,** and the plaintiff is **AWARDED $21,451.95**, plus post-judgment interest.

### iii.   *Tortious Interference*

In Virginia, tortious interference with contractual relations requires "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Schaecher v. Bouffault*, 290 Va. 83, 106 (2015).

---

actual amounts the defendant charged to file tax returns before Liberty terminated her franchise would form a more accurate basis for determining the value of the plaintiff's conversion claim than company-wide averages, the Court sought additional evidence. ECF No. 12. In response to the Court's concern, the plaintiff submitted a second affidavit (ECF No. 14), providing the information the Court relies upon in this Opinion.

Liberty had business relationships at the franchise locations the defendant operated, because it had active clients at Liberty offices. *See Gov't Emps. Ins. Co. v. Google*, Inc., 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (articulating Virginia's standard for alleging a business relationship or expectancy); ECF No. 1 ¶ 59 (alleging business relationships "with clients and prospective clients"). As the franchisee, the defendant knew Liberty expected her franchises to produce business for Liberty.

The Court cannot conclude that "returning to her former Liberty tax offices" (ECF No. 1 ¶ 61), without more, constitutes "intentional interference" with the business. *See Schaecher*, 290 Va. 83, at 106. However, soliciting former Liberty customers on Facebook (ECF No. 1 at 43) and continuing to file tax returns after Liberty terminated the franchise agreements (ECF No. 14 ¶ 3) certainly amounts to interference. *See also* ECF Nos. 1-1 – 1-3 ¶ 10(d) (covenant not to solicit). As we discussed in part (ii), *supra*, the defendant's interference harmed the plaintiff to the tune of $21,451.95.

The plaintiff requests nominal damages in the amount of $1.00 for tortious interference. The Motion for Default Judgment is **GRANTED as to Count Three**, and the plaintiff is **AWARDED $1.00.**

### iv.   *Attorneys' Fees*

In addition to judgment on the three claims for damages, the plaintiff requests attorneys' fees it incurred to enforce the promissory notes. ECF No. 11 at 10 ¶ 4. Both the promissory notes contain an agreement that the defendant will "pay all attorneys' fees . . . that Liberty may incur in connection with the collection or enforcement" of

the note. ECF Nos. 1-4 through 1-5 at 2. The Court must review the plaintiff's request to ensure the fees are reasonable. *Grabert*, 8 F. Supp. 3d at 737; *Kennedy v. A Touch of Patience Shared Hous., Inc.*, 779 F.Supp.2d 516, 525 (E.D.Va. 2011). The Court determines a "lodestar figure" for attorneys' fees by multiplying the number of reasonable hours by the reasonable rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.2009). Then the Court determines reasonableness by reference to twelve factors: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Id.* at 243–44.

The Court need not address every one of the twelve reasonableness factors in detail. *Grabert*, 8 F. Supp. 3d at 738; *Dollar Tree Stores, Inc. v. Norcor Bolingbrook Associates, LLC*, 699 F.Supp.2d 766, 768 (E.D.Va.2009). Helpfully, the twelfth factor provides substantial guidance here. In *Grabert*, the Honorable Mark S. Davis considered facts remarkably similar to this case. 8 F. Supp. 3d 731. There, Liberty's attorney was a fifth-year associate who billed at a rate of $225 per hour and spent

17.7 compensable hours on the case. *Id.* at 738. Judge Davis found that rate reasonable in light of nearly identical awards to Liberty attorneys in the past. *Id.* at 737–39. Here, six different lawyers and one legal assistant worked on the case for Liberty. ECF No. 11-2 ¶¶ 1-9. Even though the type of lawyering in this case is virtually identical to what Judge Davis evaluated, the higher rate for some lawyers here is reasonable given their level of experience and awards of higher rates in other cases in this district. *See, e.g., Hair Club for Men, LLC*, 2017 WL 1250998, at *8, 13 (E.D. Va. Apr. 3, 2017).

*Grabert* involved a claim for injunctive relief and three separate claims for damages, "only one of which is related to the promissory notes that include a provision for the recovery of attorney's fees." 8 F. Supp. 3d at 739. Because Liberty failed to effectively document how its counsel's time was divided among tasks related to the promissory notes versus other issues, the court awarded only forty percent of the fees Liberty requested. *Id.* The Court is presented with similar circumstances here and applies the same reasoning. The plaintiff's lawyers have anticipated this approach and asked only for an apportionment of fees equal to one sixth of the total, to represent the appointment between work related to the franchise agreements and work related only to the promissory notes. The Court finds that apportionment reasonable and awards **$4,987.24** in attorneys' fees.

### v. Injunction

In addition to damages for breach of contract, conversion, and tortious interference, the complaint seeks an injunction requiring the defendant to comply

with the post-termination obligations under the franchise agreements. ECF No. 1 at 11 ¶ 4. In the instant motion, the plaintiff requests default judgment on the claim for an injunction. ECF No. 11 at 10 ¶ 5. In order to grant an injunction, the Court must determine that the plaintiff pled facts sufficient to demonstrate four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir.2011); *Grabert*, 8 F. Supp. 3d at 739.

The Supreme Court has cautioned that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" for a finding of irreparable harm, especially when future litigation could provide a remedy. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoted in *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994)). However, there is a pattern of decisions in this district where courts have found irreparable harm to Liberty, and granted injunctions, when the admitted facts established that a Liberty franchisee actually operated a competing tax preparation business. *See, e.g.*, *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 825–26 (E.D. Va. 2007); *JTH Tax, Inc. v. Smith*, No. CIV A. 2:06CV76, 2006 WL 1982762, at *1 (E.D. Va. June 23, 2006) (injunction issued separately).

In the instant case, the plaintiff alleges irreparable harm in two ways. First, the plaintiff cites the franchise agreements, which state that "any breach of covenants

not to complete causes damage to the integrity of Liberty's franchise system, loss of franchisee and customer goodwill, and irreparable harm." ECF No. 1 ¶ 24. In an unpublished case, the Fourth Circuit considered a plaintiff's request for an injunction on the grounds that the plaintiff's written agreement with the defendant stated that harm arising from breach of the agreement was, *per se*, irreparable. *Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351 (4th Cir. 2011). The court of appeals, reviewing the district court's decision for an abuse of discretion, affirmed the grant of an injunction, but the court explained that "contractual agreements alone do not control the district court's exercise of its equitable discretion." *Id.* at 353 (internal citations omitted). Although this Court is not bound by that unpublished decision, it finds the reasoning persuasive. The Court concludes that, taken alone, mere assertions in the franchise agreements that every breach results in irreparable harm are insufficient.

Second, the plaintiff claims that, in addition to money damages resulting from the breaches of contract alleged in Count One, it has suffered "irreparable harm to its business, reputation, and goodwill for which damages alone are an inadequate remedy." ECF No. 1 ¶ 51. Then, in the Motion for Default Judgment, the plaintiff asserts that, "[o]n information and belief, defendant wrongfully identified herself as associated with Liberty, solicited former Liberty clients, and engaged in other acts harmful to Liberty and its employees." ECF No. 11 ¶ 18. In affidavits, the plaintiff establishes that the defendant filed at least 193 tax returns after her franchise agreement was terminated, resulting in monetary losses to Liberty. ECF No. 11-3 ¶

18

3–4; ECF No. 14-1 ¶ 3. The Fourth Circuit has upheld a district court's finding that possible future loss of reputation and goodwill constituted irreparable injury, indicating that "the threat of a permanent loss of customers and the potential loss of goodwill also support a finding of irreparable harm." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir.1994); *see also JTH Tax, Inc. v. Donofrio*, No. 2:06-cv-47, 2006 WL 2796841, at *5 (E.D.Va. Sept. 26, 2006) (finding that a "continued breach" creates a "high likelihood of permanent loss of former and potential customers"). Because the defendant sought to draw customers away from Liberty, and she actually operated a business that competed with Liberty, the Court finds that the harm the defendant caused by soliciting Liberty customers is irreparable.

The Fourth Circuit has typically considered the adequacy of legal remedies as part of the irreparability analysis, *see Multi-Channel TV Cable Co.*, 22 F.3d at 552 (counting the difficulty of ascertaining the plaintiff's monetary damages as a reason his harm was irreparable); *Blackwelder Furn. Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 197 (4th Cir.1977) ("Irreparability of harm includes the impossibility of ascertaining with any accuracy the extent of the loss.") Therefore, for the reasons previously outlined, the Court finds that legal remedies cannot fully compensate the plaintiff for the harm of losing unknown future customers due to the defendant's operation of a competing tax preparation business.

The injunction the plaintiff seeks in this case amounts to nothing more than the enforcement of the defendant's contractual obligations. *See, e.g., Lee*, 514 F. Supp.

2d at 825. It would require the defendant to return client lists, tax return files, and the operations manual to Liberty, and it would restrict the defendant from operating a tax preparation business within a certain area of Los Angeles, until September 22, 2023. The defendant would be free to operate any other kind of business in the restricted area or to operate a tax preparation business elsewhere, until the restricted period elapsed. In contrast, denying the request for an injunction would leave open the potential for ongoing economic and reputational harm to Liberty. Therefore, the Court finds that the balance of the hardships favors granting the injunction.

Finally, the Court considers whether an injunction requiring the defendant to return Liberty's property and to stop running a competing business for a few months would be in the public interest. The Fourth Circuit has found this factor to weigh against granting a preliminary injunction, where the injunction would require significant administrative changes to a company's health care benefits, *Di Biase v. SPX Corp.*, 872 F.3d 224, 235-36 (4th Cir. 2017), but that effect is far more severe than the facts presented here. An injunction would not require the defendant to restructure her business and would not dramatically affect customers, who—once the defendant complied with an injunction and returned their files to Liberty—could likely just as easily have their taxes prepared by a legitimate franchisee. Additionally, since the Court is issuing this Order after the 2023 federal tax deadline, the impact on the defendant's business operations and her customers may even be minimal. In contrast, courts in this district have found that "enforcing legitimate noncompete obligations serves the public interest in preventing consumer confusion."

20

*Lee*, 514 F. Supp. 2d at 826 (internal citation and punctuation omitted); *see Lorillard Tobacco Co. v. S & M Brands, Inc.*, 616 F. Supp. 2d 581, 589 (E.D. Va. 2009) (describing "wide public interest in fair competition and avoiding confusion in the marketplace"). This Court agrees with that reasoning, especially in the context of a franchise business, where contractual noncompete agreements protect the franchise mark, for the benefit of the franchisor as well as future franchisees. *See id*. For these reasons, the Court finds that the fourth factor also favors the plaintiff.

The plaintiff's request for an injunction is **GRANTED**. The defendant is **REQUIRED** to return to the plaintiff all confidential information that is the plaintiff's property, including client lists, tax return files, and the operations manual. The defendant is **ENJOINED** from soliciting former Liberty clients, or conducting a tax return business, within the restricted area identified in her franchise agreements, until September 22, 2023.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Default Judgment is **GRANTED.**  It is **ORDERED** that default judgment be **ENTERED** in favor of the plaintiff in the following amounts: $87,926.93, plus post-judgment interest as to Count One; $21,451.95, plus post-judgment interest as to Count Two, $1.00 as to Count Three; and $4,987.24 in attorneys' fees. Post-judgment interest shall be calculated in the manner set forth in 28 U.S.C. § 1961.

It is **FURTHER ORDERED** that Defendant Jasmine White is **DIRECTED** to return to the plaintiff all confidential information that is the plaintiff's property, including client lists, tax return files, and its operations manual.

The defendant is **ENJOINED** and **RESTRAINED** from soliciting former Liberty clients, or conducting a tax return business, within the restricted area identified in the defendant's franchise agreements with Liberty, until September 22, 2023.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the parties, including to Defendant White at both the addresses listed on the Summons (ECF No. 2).

**IT IS SO ORDERED.**

_____/s/ _JKW_

Jamar K. Walker
United States District Judge

Norfolk, Virginia
May 8, 2023